IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Sur G. Novel,**

 Plaintiff,

 v.

**Jeffery A. Zapor, et al.,**

 Defendants.

Case No. 2:12-cv-737

Judge Graham

Magistrate Judge Kemp

**OPINION AND ORDER**

Plaintiff Sur G. Novel, Esq. initiated this action *pro se*, alleging that Defendants Jeffery A. Zapor, David C. Morrison, Esq., and Fred W. Mankins engaged in a scheme to defraud Plaintiff Novel and deprive him of his interest in real property located in Walhonding, Ohio.

This matter is now before the Court on a factual challenge to its subject matter jurisdiction over Plaintiff's claims. Defendant Mankins moved to dismiss the complaint on the grounds that Plaintiff, despite being a United States citizen, cannot demonstrate that he is a citizen of a state for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). After Plaintiff failed to timely respond to the motion to dismiss, the Court ordered him to show cause why this action should not be dismissed for lack of subject matter jurisdiction. Plaintiff responded by submitting evidentiary materials which he believes prove that he is domiciled in New York.

For the reasons that follow, the Court finds that it does not have diversity jurisdiction because the evidence establishes that Plaintiff is domiciled in Thailand and not in New York.

1

**I. Factual and Procedural History**

    **A.  Background**

The real property located at 29300 Front Royal Road, Walhonding, Ohio is the subject of this lawsuit.  *See* Doc. No. 1, Compl. ¶ 6.  The property was owned by Carrie Gallwitz, Plaintiff Novel's grandmother, who passed away on August 20, 2007.  *Id.* ¶¶ 6, 9.  After her death, a dispute arose between Plaintiff Novel and Glen Gallwitz as to who owned the property.  Glen Gallwitz was married to Carrie Gallwitz at the time of her passing and believed he was the fee simple owner of the property.  *Id.* ¶¶ 11–12.  Plaintiff Novel asserted the property belonged to the Carrie Gallwitz Living Trust.  *Id.* ¶¶ 7–10.

The three defendants in this case all played some role in assisting Mr. Gallwitz in his efforts to establish ownership of the property in Walhonding, Ohio.  On October 5, 2007, Mr. Gallwitz brought a quiet title action against Plaintiff Novel in the Knox County Court of Common Pleas.  *Id.* ¶¶ 10–11; *See* Doc. No. 3-1, Def. Zapor Mot. To Dismiss, Exh. A.  Defendant Jeffery A. Zapor was legal counsel for Mr. Gallwitz in the quiet title action.  While the litigation was pending, a temporary restraining order was granted to restrain Plaintiff Novel from selling or encumbering the property or from evicting Mr. Gallwitz.  Compl. ¶ 20.  A preliminary injunction was granted on November 15, 2007.  *Id.* ¶ 21.

Mr. Gallwitz allegedly executed a series of documents on October 17, 2007, including a will, quit claim deed, living trust agreement, and power of attorney.  *Id.* ¶¶ 23, 41, 46, 49, 50.  These documents were allegedly drafted and notarized by Defendant David Morrison, Esq.  *Id.* ¶¶ 43, 47, 51.  Defendant Fred Mankins purportedly witnessed the execution of Mr. Gallwitz's will and power of attorney.  *Id.* ¶¶ 49, 103.  Mr. Gallwitz passed away on July 2, 2009.  *Id.* ¶ 63. Thereafter, the quiet title action was dismissed.  *Id.* ¶ 71.

Plaintiff Novel initiated the present action *pro se* on August 15, 2012.  Plaintiff alleges that Defendant Zapor engaged in a scheme to defraud Plaintiff Novel during the period of time between 2007 and 2012.  *Id.* ¶ 13.  To further this scheme, Plaintiff alleges that Defendant Zapor intentionally concealed the will of Carrie Gallwitz, the prenuptial agreement of Carrie and Glen Gallwitz, and the quit claim deed, living trust agreement, and power of attorney executed by Mr. Gallwitz on October 17, 2007.  *Id.* ¶¶ 23, 40, 41, 46, 50.  Plaintiff Novel alleges that Defendants Zapor, Morrison, and Mankins conspired to deprive Plaintiff of his interest in the property located at 29300 Front Road in Walhonding, Ohio.  Plaintiff Novel alleges he has a reasonable belief that Mr. Gallwitz's will was backdated and his power of attorney forged by Defendants in order to carry out this fraud.  *Id.* ¶¶ 78, 79, 104.  Along with three allegations of fraud (Counts I, II, and III), Plaintiff's claims include abuse of process (Count IV), obstruction of justice (Count V), aiding and abetting (Count VI), civil conspiracy (Count VII), undue influence (Count VIII), and professional misconduct (Count IV).

  B. **Subject Matter Jurisdiction**

The factual allegations and procedural history pertinent to the determination of subject matter jurisdiction are as follows.  Defendant Jeffery A. Zapor is a United States citizen residing in Michigan.  Compl. ¶ 2.  Defendant David C. Morrison and Defendant Fred W. Mankins are United States citizens and residents of Ohio.  *Id.* ¶¶ 3–4.  Plaintiff's complaint alleges that he is a "US citizen, an overseas resident of Bangkok, Thailand, and a licensed New York attorney."  *Id.* ¶ 1.

Defendants Zapor, Morison, and Mankins filed separate motions to dismiss Plaintiff Novel's complaint.  *See* Doc. Nos. 3, 7, 9.  Relevant to this matter is Defendant Mankins' motion to dismiss.  Mankins asserts, as a threshold issue, that the Court is without subject matter

jurisdiction to hear this case under 28 U.S.C. § 1332. Mankins contends that Plaintiff Novel is domiciled in Thailand and is "stateless," for purposes of diversity jurisdiction. In the alternative, he asserts that Plaintiff is domiciled in Ohio; therefore, complete diversity is destroyed.

When the time had lapsed under the Court's local rules for Plaintiff to respond to the motion to dismiss, the Court ordered Plaintiff Novel to show cause as to why his action should not be dismissed for lack of subject matter jurisdiction. *See* Doc. No. 10. Plaintiff Novel then responded to the Defendants' motions to dismiss, discussing among other things, the jurisdictional issue and submitting evidentiary materials directed at that issue. *See* Doc. No. 12. Thereafter Plaintiff Novel responded to the Court's order to show cause, submitting additional evidentiary materials directed at the jurisdictional issue. *See* Doc. No. 14.

In Plaintiff Novel's response in opposition to the Defendants' motions to dismiss, Plaintiff first asserts that he is a resident of Bangkok, Thailand, providing "'prima facie' evidence" that he is not domiciled in Ohio. *See* Doc. No. 12, p. 10. Plaintiff states that he was last domiciled in Ohio in 2001. Plaintiff attended high school, undergraduate school, and law school in Ohio. *Id.* at 12. His only remaining connection to Ohio is a P.O. Box address. *Id.* at 11. Although Plaintiff Novel's mother remains in Ohio, he insists he has "absolutely no intent whatsoever" to return to live in Ohio. *Id.*

Plaintiff Novel moved to New York in May 2001 in order to study and prepare for the New York state bar. *Id.* at 12. At that time, he resided in Forest Hills, New York. Plaintiff Novel was admitted to the New York state bar in April 2002, and immediately thereafter, moved to Thailand. Plaintiff states that he currently has a residence in Brooklyn, New York, where he can receive mail. In addition, he continues to maintain his New York license to practice law. *Id.*

at 13.  Plaintiff maintains United States bank accounts and submits his federal tax returns annually.  Doc. No. 14, Pl.'s Reply to Show Cause Order, p. 8.

Plaintiff Novel currently resides in a rented home with his Thai wife in Bangkok, Thailand, where he works as an immigration attorney.  Pl.'s Resp. to Def.'s Mot. To Dismiss, p. 11–12.  Plaintiff also owns a company in Bangkok.  *Id.* at 12.  One of Plaintiff's sisters resides in Bangkok as well.  Plaintiff is not a citizen or permanent resident of Thailand, although he qualifies for a permanent residence permit.  Pl.'s Reply to Show Cause Order, p. 7.  He maintains a business visa and temporary work permit, which he renews annually.  Pl.'s Resp. to Def.'s Mot. To Dismiss, p. 14.  Although Plaintiff Novel has resided in Thailand for approximately ten years, he states that he intends to return to New York to work as an international corporate attorney.  *Id.* at 12.

Plaintiff has remained in Bangkok since April 2002, and has returned to the United States at least two times—once in 2007 and once in 2008.  *Id.* at 13.  During these trips, Plaintiff visited his father and sister in California, where Plaintiff also stores many of his personal items.  Plaintiff asserts that if he is not domiciled in New York, his alternative domicile is California.  *Id.* at 14.

In his reply to the Court's order to show case, Plaintiff asserts that he is domiciled in the United States, while temporarily living and working abroad.  He cites to the Foreign Affairs Manual ("FAM"), issued by the United States Department of State.  The FAM provides guidelines for determining an individual's domicile for purposes of the United States Immigration and Nationality Act ("INA").  Pl.'s Reply to Show Cause Order, p. 3.  Under the FAM, Plaintiff notes: "A U.S. citizen living abroad whose employment meets the requirements of INA . . . is considered to be domiciled in the United States."  *Id.*  Further, Plaintiff contends

5

that his "employment abroad" meets the requirement of INA because he is employed by a United States corporation engaged in the development of foreign trade and commerce with the United States. *Id.* at 4. Therefore, his argument continues, the Court should find that he is domiciled in the United States for "legal purposes." *Id.* at 4. Plaintiff also cites to the FAM for the proposition that he has established and is maintaining a "US domicile while living abroad temporarily." *Id.* at 6.

Plaintiff argues that establishing domicile for purposes of diversity jurisdiction should involve the same domicile analysis used in the application process for U.S. citizens living abroad seeking U.S. permanent residence cards for relatives. *Id.* at 9. Finally, Plaintiff invokes a due process argument to assert that domicile should not be used as a threshold barrier to deny him access to the United States federal court system. *Id.*

## II. Discussion

### A. Legal Standard

The district courts may exercise jurisdiction over an action between "citizens of different states" where the matter in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1). The plaintiff has the burden of proving the court's jurisdiction by a preponderance of the evidence where subject matter jurisdiction is challenged pursuant to a motion under Federal Rule of Civil Procedure 12(b)(1). *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Lexington Supermarket, Inc. v. U.S. Dept. of Agriculture*, 84 F. Supp. 2d 886, 888 (S.D. Ohio 1999).

The framework under which the court reviews a Rule 12(b)(1) motion depends on the nature of the challenge to the court's subject matter jurisdiction. *Ohio Nat'l Life Ins. Co. v.*

*United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wojton v. United States*, 199 F. Supp. 2d 722, 725 (S.D. Ohio 2004).  Rule 12(b)(1) motions generally come in two varieties: facial attacks and factual attacks.  *Ohio Nat'l Life*, 922 F.2d at 325.  As the Sixth Circuit has explained, "a facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading."  *Id.*  A district court must take the allegations in the complaint as true when reviewing a facial attack.  *Id.*  On the other hand, a factual attack on the court's jurisdiction presents a factual controversy, wherefore the district court must weigh the conflicting evidence to resolve the disputed jurisdictional facts.  *Id.*  When the district court reviews a factual attack, "no presumptive truthfulness applies to the factual allegations."  *Id.*  Instead, the court has wide discretion to consider "affidavits, documents and even a limited evidentiary hearing" to determine whether subject matter jurisdiction exists.  *Id.*

Defendant Mankins' motion to dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 1332 presents a factual attack.  Though Plaintiff alleges in the complaint that he is a United States citizen, Mankins contends that Plaintiff cannot prove he is domiciled in any state other than Ohio, where Mankins resides.  Attached to the motion to dismiss are documents filed by Plaintiff in Ohio state court proceedings, and in those documents Plaintiff lists Bangkok, Thailand as his place of residence.  *See* Def. Mankins Mot. To Dismiss, Exs. 14, 17, 21.  Mankins further argues that there is no evidence, besides the complaint's reference to Plaintiff having being licensed to practice law in New York a decade ago, to establish that Plaintiff is domiciled in New York.

In response to Defendant Mankins' motion to dismiss, Plaintiff offered evidence in support of his argument that he is domiciled in New York.  Further, the Plaintiff had a second opportunity to put forth any evidence for the Court's consideration in his response to the Court's

7

show cause order.  With both of his responses, Plaintiff Novel submitted evidentiary material to support his purported New York domicile.

This presents a factual attack – a factual controversy for which the Court must weigh the evidence to resolve the jurisdictional dispute.  The Court has wide discretion to consider any evidence to resolve the disputed facts.  *See Hatcher v. U.S.*, 855 F.Supp.2d 728, 731 (E.D. Tenn. 2012) ("In resolving the factual conflict to determine whether jurisdiction exists, the court has broad discretion to consider affidavits and documents outside the pleadings in ruling on the motion under Rule 12(b)(1) without converting the motion into one for summary judgment.").

Neither party has requested a hearing and the Court has obtained sufficient evidentiary material from both parties such that the Court determines an evidentiary hearing is not warranted.  *See Ohio Nat'l Life*, 922 F.2d at 327 (upholding the district court's decision to deny an evidentiary hearing on the issue of subject matter jurisdiction and holding that a district court in its discretion is under no obligation to hold such a hearing); *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939) ("[T]here is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.").  *See also McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) ("A court can evaluate its jurisdiction without an evidentiary hearing 'so long as the court has afforded [the parties] notice and a fair opportunity to be heard.'") (citing *Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323–24 (3d Cir. 1972)).  Thus, the Court now weighs the parties' evidence provided in the form of affidavits and other documents to resolve the factual basis for diversity jurisdiction, while noting that Plaintiff maintains the burden of proof.

B.  **Law & Analysis**

To establish diversity jurisdiction under 28 U.S.C. §1332(a)(1), Plaintiff Novel must be a citizen of the United States, and a citizen of a particular state, different from that of which Defendants are citizens.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989).  Plaintiff is a United States citizen residing in Bangkok, Thailand.  Comp. ¶ 1.  Plaintiff asserts that he is domiciled in the state of New York.  Pl.'s Reply to Def.'s Mot. To Dismiss, p. 14.  Defendant Mankins contends that Plaintiff Novel is domiciled in Thailand, and is therefore not a "citizen of a State." Mot. To Dismiss, p. 3.  In the alternative, Defendant argues that if Plaintiff is domiciled in the United States, he is domiciled in Ohio.  *Id.* at 4.

For purposes of establishing diversity jurisdiction under Section 1332, "citizenship" is synonymous with 'domicile,' and not with 'residence.'  *Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968).  An individual's domicile is "his true, fixed, and permanent home and principal establishment."  *Eastman v. University of Michigan*, 30 F.3d 670, 672–73 (6th Cir. 1994) (quoting Black's Law Dictionary 484 (6th ed. 1990)).  It is where he returns whenever he is absent.  *Id.*  The place where an individual resides is properly taken to be his domicile, absent a showing to the contrary.  *District of Columbia v. Murphy*, 314 U.S. 441, 445 (1914).

To determine a party's domicile, the court can look to several factors which indicate the "extent of a particular party's ties to the purported domicile."  *Persinger v. Extendicare Health Services, Inc.*, 539 F. Supp. 2d 995, 997 (S.D. Ohio 2008).  These factors include: "[c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs and other associations; place of employment or business; driver's licenses and other automobile registration; [and] payment of taxes." *Id.* (quoting 13B Charles A. Wright,

9

Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3612 (2d ed. 1984)). The inquiry focuses not only on the number of contacts an individual has with the purported domicile, but also the substantive nature of the contacts.  *Id.*

A citizen of the United States who is not domiciled in a State is "stateless" for purposes of diversity jurisdiction.  *Newman-Green,* 490 U.S. at 828; *National Enterprises, Inc. v. Smith*, 114 F.3d 561, 566 (6th Cir. 1997).  Thus, a plaintiff who is residing abroad must be domiciled in a particular state in order to satisfy the requirements of 28 U.S.C. § 1332(a)(1).  *National City Bank v. Aronson*, 474 F. Supp. 2d 925, 927–28 (S.D. Ohio 2007).

In *Aronson*, the court held that Defendant Ewbank's presence in the lawsuit destroyed diversity jurisdiction.  *Id.* at 933.  Ms. Ewbank, a United States citizen, was residing in Russell, New Zealand.  *Id.* at 930.  She was granted permanent residency in New Zealand and expressed a desire to remain there.  *Id.* at 931.  Eventually, she intended to become a resident of New Zealand.  *Id.*  However, Ms. Ewbank also had significant connections with the state of Colorado. She owned a residence, maintained an active bank account, owned two vehicles registered in Colorado, maintained a valid driver's license, paid state and federal income taxes, and served on the board of a community group in Colorado.  *Id.*  The court found that Ms. Ewbank was not a citizen of Colorado for diversity purposes.  *Id.* at 932.  Emphasizing her repeated intention to remain in New Zealand permanently and become an active member of the society, the court determined Ms. Ewbank was domiciled in New Zealand and was therefore "stateless" for purposes of diversity jurisdiction.  *Id.* at 933.

An individual is only domiciled in one place at a time.  *Persinger*, 539 F. Supp. 2d at 996.  To establish a new domicile, two requirements must be met.  *Id.*  First, the individual must reside in the new domicile, and second, the individual must intend to remain there.  *Id.*  (citing

*Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990)).  Standing alone, "absence from a fixed home, however long continued, cannot work the change."  *Kaiser*, 391 F.2d at 1009 (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874)).  However, "a floating intention" to return to one's previous domicile is not enough to prevent a new location from eventually becoming one's domicile.  *See Gilbert v. David*, 235 U.S. 561, 570 (1915).

Intent, alone, is insufficient evidence when coupled with conflicting facts.  *Sadat v. Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980) (holding that "although the plaintiff disclaimed any intention of settling [abroad]," expressed intention must be examined in light of the "circumstantial evidence of a person's manifested conduct").  *See also District of Columbia*, 341 U.S. at 456 ("One's testimony with regard to his intention is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted . . . [by] inconsistent acts.").

In *Gilbert*, the U.S. Supreme Court considered whether the plaintiff in that case was domiciled in Michigan, where he owned a home and previously resided for many years, or in Connecticut, where he moved after a death in the family and had remained for the past twenty years.  235 U.S. at 569.  During these twenty years, the plaintiff returned to Michigan only briefly and infrequently.  *Id.* at 569.  The Court found that plaintiff was now domiciled in Connecticut.  *Id.* He moved his family there, bought a house, and settled in Connecticut.  *Id.* at 570.  The Court noted that although the plaintiff maintained ownership of his Michigan residence, exercised his right to vote in Michigan, and declared an intention to return, this was insufficient to prevent a change in his domicile.  *Id.*  The Court cited Judge Story's "domicile" explanation:

> If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil[e], it is to be

11

> deemed his place of domicil[e], notwithstanding he may entertain a floating intention to return at some future period [to his previous location].

*Id.* at 569 (quoting Conflicts of Laws, 7th ed. § 46, p.41). Therefore, the plaintiff's "floating intention" to return to Michigan could not save his change in domicile.

Likewise, the court in *Sadat* rejected the defendant's argument that he was domiciled in Pennsylvania. 615 F.2d at 1181. The defendant was born in Egypt. He became a naturalized citizen of the United States, where he was domiciled in Pennsylvania for some time. *Id.* at 1180. For reasons pertaining to work, the defendant moved abroad, taking with him his family and all of his belongings. *Id*. He claimed that he had full intention to move back to Pennsylvania when he was able to financially support the move; therefore, Pennsylvania was his domicile. *Id.* The court rejected this argument. *Id*. at 1181. The defendant had established a new domicile where he maintained his home, sent his children to school, obtained a driver's license, and operated his business. *Id*. The court determined that the plaintiff was domiciled abroad, "notwithstanding his assertion that he never intended to make [it] his home." *Id.*

In this case, Plaintiff Novel asserts that he is domiciled in New York. Pl.'s Reply to Def.'s Mot. To Dismiss, p. 12. In May 2001, Plaintiff moved from Ohio to New York. *Id.* At the time he relocated to New York, it appears Plaintiff had no intention of returning to Ohio. *Id.* at 11–14. This is further evidenced by Plaintiff's lack of substantive ties to Ohio and want of any evidence that Plaintiff has since returned to Ohio after his move in 2001. After moving to New York, Plaintiff Novel remained there while he studied and sat for the New York state bar exam. *Id.* at 12. Thereafter, Plaintiff moved to Thailand and has resided there since April 2002. *Id.*

The Court begins with the presumption that Plaintiff is domiciled in Thailand. He states that he has been living continuously in Bangkok since 2002. *See District of Columbia,* 314 U.S.

at 455 ("The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary.").

The extent of Plaintiff's ties to a particular domicile can be examined using the factors articulated in *Persinger*. These factors lead strongly to the conclusion that Plaintiff is domiciled in Thailand. Plaintiff currently resides in Thailand, where he has been employed as an attorney for over ten years. Plaintiff states that he owns a company in Thailand. He is married to a Thai citizen and his sister lives in Thailand as well. Considering Plaintiff has lived in Thailand for more than ten years, he likely has a considerable amount of personal belongings at this residence. Plaintiff does not claim to keep any of his personal belongings in New York. He states that he stores many of his personal items with family members in California. Although Plaintiff maintains a United States bank account and annually submits his federal taxes, Plaintiff does not claim that he pays New York state taxes, directs his banking to a New York account, is registered to vote in New York, or has a New York driver's license. These factors weigh in favor of concluding that Plaintiff Novel is domiciled in Thailand. Plaintiff's contacts in Thailand are of the substantive nature that suggests his domicile is in Thailand. *See Persinger*, 539 F. Supp. 2d at 997.

Plaintiff Novel states that he has a "legal residence" in Brooklyn, New York. Plaintiff does not claim to have ever lived at this residence; instead, he states only that he can receive mail there. Plaintiff admits that he did not return to New York during his only two visits to the United States since 2002. The affidavit of Mr. Don L. Lacknett, Esq. (a college friend of Novel) was offered in support of Plaintiff's reply to the Court's show cause order. Mr. Lacknett states only that he is "aware" of Plaintiff's alleged New York residence, but he fails to establish that he has any personal knowledge of the residence. *See* Doc. No. 16, p. 2–4. For instance, Mr. Lacknett

does not state that he has ever seen or visited the residence, or that he has ever directed any of his communications (telephone or mail) with Novel to that residence.  *See* Fed. R. Evid. 602 (requiring personal knowledge based on personal perception).

Plaintiff also states that he maintains his license to practice law in New York.  Although this is relevant evidence, it is not – standing alone – sufficient to overcome the substantial evidence leading to the conclusion that Plaintiff is not domiciled in New York.  *See Moir*, 895 F.2d at 269 (noting that the burden is on the plaintiff to prove the existence of the court's subject matter jurisdiction).

The Court finds that Plaintiff Novel is domiciled in Thailand.  Although Plaintiff Novel expresses an intention to return to New York, a "floating intention" to return someday is insufficient.  Plaintiff Novel has a present domicile in Thailand.  He has resided there for at least ten years, has established a life there, and has expressed no concrete plan to return to New York.

In fact, Plaintiff characterizes his aspirations of returning as an "intended return from Thailand in the future."  *See* Pl.'s Resp. in Opp. To Def.'s Mot. To Dismiss, p. 13.  This is similar to the plaintiff in *Sadat*, who claimed he fully intended to move back to Pennsylvania when his finances could support the move.  615 F.2d at 1180.  However, that court determined the plaintiff had established a new domicile abroad where he currently maintained his home, sent his children to school, and operated his business.  *Id*. at 1181.  *See also Gilbert*, 235 U.S. at 570 (holding that plaintiff's declared intention to return to Michigan after living in Connecticut for twenty years was insufficient).

It appears Plaintiff intends to remain in Bangkok, Thailand, at least, for the immediately foreseeable future.  Although Plaintiff still maintains a mailing address in Ohio, stores his personal belongings in California, claims to have a residence in New York, and keeps his license

to practice law in New York, his primary home—the place where he returns after his visits to the United States—is his home in Thailand.  The Court finds that Plaintiff Novel is not domiciled in a particular state as required by 28 U.S.C. §1332(a)(1).  Thus, he is "stateless" for diversity purposes.

Plaintiff Novel's argument regarding the domicile analysis adopted by the INA is inapplicable.  Plaintiff has pointed to no case law to support his proposition that the domicile analysis as outlined in the FAM has ever been or should be applied in the context of determining domicile for purposes of diversity jurisdiction.  Further, the FAM guidelines speak only to whether an individual is domiciled in the *United States*.  Diversity jurisdiction requires that an individual is a citizen of the United States *and* is domiciled in a *particular State*.  *See Newman-Green, Inc.*, 490 U.S. at 829 (emphasis added).  Even if the Court were to adopt Plaintiff's reasoning, only the first half of the diversity requirement is satisfied by the FAM guidelines.

### III. Conclusion

The Court finds that Plaintiff Novel is domiciled in Thailand.  Therefore, for purposes of diversity jurisdiction, Plaintiff is "stateless" and the Court lacks subject matter jurisdiction over this action.  This action is dismissed without prejudice and the Clerk shall enter judgment in Defendant's favor.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 21, 2013